IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 27, 2004 Session

## STATE OF TENNESSEE v. RICHARD ALLEN BUTLER and STATE OF TENNESSEE v. RE'LICKA DAJUAN ALLEN

**Direct Appeal from the Criminal Court for Knox County**
**Nos. 76909, 77455     Richard Baumgartner, Judge, and Mary Beth Leibowitz, Judge**

---

### No. E2004-00359-CCA-R9-CD - Filed March 30, 2005

---

The issues presented by these consolidated Rule 9 interlocutory appeals are whether Tennessee's sexual exploitation of a minor statute is constitutional in light of Ashcroft v. Free Speech Coalition, 535 U.S. 234, 122 S. Ct. 1389 (2002), and whether the trial court may require the State to provide the defense with a copy of the alleged child pornography that forms the basis for the prosecution's case. As to these questions, the trial courts ruled that the State had to provide the defense with copies of the alleged pornographic materials and that while a portion of the statute is unconstitutional, the remainder is not. Following our review, we affirm the rulings of the trial courts.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JERRY L. SMITH and J. C. MCLIN, JJ., joined.

Gregory P. Isaacs, Knoxville, Tennessee, for the appellant, Richard Allen Butler.

James A.H. Bell, Joan M. Stallard, and Richard L. Gaines, Knoxville, Tennessee, for the appellee, Re'Licka Dajuan Allen.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Kevin Allen, Assistant District Attorney General, for the appellee/appellant, State of Tennessee.

### OPINION

### FACTS AND PROCEDURAL HISTORY

On April 8, 2003, Richard Allen Butler was charged by the Knox County Grand Jury with one count of sexual exploitation of a minor for possessing materials that included a minor engaged

in sexual activity, in violation of Tennessee Code Annotated section 39-17-1003. In a separate case, Re'Licka Dajuan Allen was charged by the Knox County Grand Jury on June 17, 2003, with one count of sexual exploitation of a minor for possessing materials that included a minor engaged in sexual activity, and with two counts of aggravated sexual exploitation of a minor for possessing, with the intent to transport and with the intent to distribute, materials that included a minor engaged in sexual activity, in violation of Tennessee Code Annotated section 39-17-1004. Both cases involved material located on the defendants' computers. In Allen's case, the material was originally discovered by a computer repair technician at a store where Allen had taken his computer for repair. The technician informed his manager of his discovery, and the manager in turn contacted Knox County law enforcement.

Counsel for both defendants filed motions for discovery, including requests that the State provide them with copies of the computer hard drives and "other computer materials" for their independent examination and review. The State refused, offering to make the material available for examination by defense counsel and defense computer experts at the sheriff's department, but contending that it would constitute a violation of the sexual exploitation statute for the material to be removed from the custody and control of the sheriff's department. In response, counsel for both defendants filed motions to compel the production of the evidence. In addition, counsel for Butler filed a motion to dismiss, arguing that under a post-Free Speech Coalition analysis, the statute was "unconstitutionally overbroad and vague" and "chill[ed] a substantial amount of protected speech under the First Amendment." Counsel for Allen also filed a "Notice to Challenge of Constitutionality of Statute," indicating his intention of raising a challenge to the statute's constitutionality in future motions or pleadings.

On September 19, 2003, the Butler trial court entered an order granting Butler's Rule 16(a)(1)(C), Tennessee Rules of Criminal Procedure, motion to copy evidence. The court ordered the State to provide Butler with a copy of his computer hard drive, along with copies of any alleged pornographic images of minors which had been seized from him; that Butler's counsel keep the material in a secure location accessible only to counsel; that the material be viewed only by counsel, counsel's employees and agents; and that the material be returned upon the completion of the matter.

On December 9, 2003, the Butler trial court entered a "Memorandum Opinion and Order" in which it concluded that subsection (b) of the sexual exploitation of a minor statute was unconstitutional under Free Speech Coalition because it could apply to material in which an actual minor was not used. The court further concluded, however, that the remaining subsections of the statute were constitutional and could be severed from the unconstitutional subsection and enforced under the doctrine of elision. Accordingly, the trial court denied the defendant's motion to dismiss and ordered that the State be allowed to amend the indictment to eliminate any reference to the unconstitutional portion of the statute.

Butler subsequently sought permission to file an interlocutory appeal of the trial court's ruling on the constitutionality of the statute, and the State sought permission to appeal the rulings on both the constitutionality and discovery issues. On February 5, 2004, the trial court granted both

parties' motions to file an interlocutory appeal, and on March 22, 2004, this court granted the parties' applications for interlocutory review pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure.

In Allen's case, a hearing on his motion to compel was held at which the State presented one witness, Carlton Bryant, an attorney employed at the Knox County Sheriff's Department. Bryant testified that his understanding of the law was that the sheriff's department could not allow counsel to take a copy of the computer hard drive from the department because the sexual exploitation statute did not contain any exemption for defense counsel to be given child pornography. He said they would, however, accommodate counsel and counsel's computer experts by mirror-imaging the hard drive and allowing them to examine the copy while it remained in the "custody and control" of the department. He testified that they contemplated setting aside a conference room for that purpose and would arrange a schedule that was convenient for counsel and his experts.

Herbert Mack, Allen's expert computer witness, described in detail the various programs and viruses by which material can be both deliberately and inadvertently downloaded into a computer and estimated that it would take him approximately one week of intensive twelve- to fourteen-hour days to complete an examination of Allen's computer hard drive. He testified he would probably require the assistance of support personnel from his office and, in addition, would need to consult regularly with counsel with respect to whether any sexually explicit files he found on the computer qualified as child pornography. He said that, given the large number of images allegedly contained on the computer, he would not be able to remember the specifics of the information without taking the computer hard drive from the sheriff's department.

Mack expressed concern about working from a "mirror image" rather than the hard drive itself, testifying that the computer programs in existence did not create true mirror images:

> A      Well, the question -- what I heard before was providing me with a mirror image. Okay. If we're talking about me working on the original computer, no, I don't need another computer as long as I can, you know, load my tools and take my tools off. If what you're going to give me is a mirror image, my concern there is that I'm not getting all of the data that's there.
>
> Q      And why is that? If it's a mirror image wouldn't you just get everything that's in the mirror?
>
> A      No, sir.
>
> Q      Why not?
>
> A      A mirror image is a misnomer, okay. The computer programs that you have right now, okay, are for the purpose of recovering good data. Okay. So if a file has been ordered damaged or erased it's not going to be on the image.

Mack conceded that his examination of the actual hard drive would entail reconnecting the original personal computer equipment, turning the computer on, and loading his software file-searching tools, and he agreed that in the process of booting up the Windows operating system the contents of the hard drive would be changed. However, according to his testimony, booting the computer would not alter either the file creation date or last accessed date of the images in question. Mack testified he was familiar with "EnCase," a forensic examination software utility available exclusively to law enforcement, but he was not aware that it had been approved by several federal district and appellate courts as a "non-invasive forensic examination tool."

The Allen trial court granted Allen's Rule 16(a)(1)(C), Tennessee Rules of Criminal Procedure, motion to compel and copy evidence, entering protective orders on December 9, 2003, and on January 5, 2004, which required the State to provide Allen's counsel with a mirror image copy of the computer hard drive rather than the actual hard drive itself. On February 23, 2004, the trial court granted the State's motion for an interlocutory appeal of the discovery ruling, and on March 30, 2004, this court granted the State's application for interlocutory review and consolidated the two cases for appeal. We will review these rulings.

## ANALYSIS

### I. Constitutionality of Sexual Exploitation of a Minor Statute

Tennessee Code Annotated section 39-17-1003 provides as follows:

> (a) It is unlawful for any person to knowingly possess material that includes a minor engaged in:
>
> (1) Sexual activity; or
>
> (2) Simulated sexual activity that is patently offensive.
>
> (b) In a prosecution under this section, the trier of fact may infer that a participant is a minor if the material through its title, text, visual representation or otherwise represents or depicts the participant as a minor.
>
> (c) A violation of this section is a Class E felony.

The statute defines a "minor" as "any person who has not reached eighteen (18) years of age." Tenn. Code Ann. § 39-17-1002(3). "Material" is defined as:

> (A)     Any picture, drawing, photograph, motion picture film, videocassette tape or other pictorial representation;
>
> (B)     Any statue, figure, theatrical production or electrical reproduction; or

-4-

> (C)     Any text or image stored on a computer hard drive, a computer disk
> of any type, or any other medium designed to store information for
> later retrieval.

Id. § 39-17-1002(2).  "Possess" is not defined in the statute.

 Butler argues that the trial court correctly ruled subsection (b) of the statute unconstitutional under Free Speech Coalition but that it erred in concluding that the remainder of the statute was constitutional and enforceable.  He contends that the terms "material" and "possess" in subsection (a) are unconstitutionally vague and overbroad and, as such, render the entire statute unconstitutional on its face. The State disagrees, arguing that the Tennessee statute, unlike the federal statute at issue in Free Speech Coalition, restricts only the possession of sexually explicit material which includes a minor as a participant.  By the State's argument, subsection (b) merely allows for a permissible inference that a participant is a minor without eliminating the minority of the participant as an essential element of the offense and without shifting the burden of proof to the defendant.  Since this issue involves the interpretation of a statute and hence is a matter of law, our review is *de novo* with no presumption of correctness given to the trial court's ruling.  See State v. McKnight, 51 S.W.3d 559, 562 (Tenn. 2001); Planned Parenthood of Middle Tennessee v. Sundquist, 38 S.W.3d 1, 7 (Tenn. 2000).

In Free Speech Coalition, the United States Supreme Court struck down as unconstitutionally overbroad two provisions of the Child Pornography Prevention Act of 1996 ("CPPA"), 18 U.S.C. § 2251 *et seq.*, which included among the definitions of child pornography:  (1) "'any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture' that 'is or appears to be, of a minor engaging in sexually explicit conduct'"; and (2) "any sexually explicit image that was 'advertised, promoted, presented, described, or distributed in such a manner that conveys the impression' it depicts 'a minor engaging in sexually explicit conduct.'" 535 U.S. at 241-42, 122 S. Ct. at 1397 (quoting 18 U.S.C. § 2256(8)(A), (D)).  The Court observed that these definitions included material that neither qualified as obscenity under Miller v. California, 413 U.S. 15, 93 S. Ct. 2607 (1973), nor caused direct  harm to minors by involving the use of an actual child in the production process, as explained in New York v. Ferber, 458 U.S. 747, 102 S. Ct. 3348 (1982).  The Court concluded, therefore, that the definitions reached a substantial portion of speech protected under the First Amendment and, thus, were unconstitutionally overbroad.  Free Speech Coalition, 535 U.S. at 251-55, 122 S. Ct. at 1402-05.

In finding subsection (b) of the Tennessee statute unconstitutional, the Butler trial court relied in part on an Arizona child pornography case, State v. Hazlett, 73 P.3d 1258 (Ariz. Ct. App. 2003), which analyzed the constitutionality of Arizona's sexual exploitation statutes in light of Free Speech Coalition.  In that case, the Arizona Court of Appeals concluded that the state's sexual exploitation of a minor statute, Arizona Revised Statutes section 13-3553, was not overly broad because it was limited in its scope to depictions of an actual, live minor but that section 13-3556 of the Statutes, which allowed the trier of fact "to infer 'that a participant is a minor if the visual depiction or live act through its title, text or visual representation depicts the participant as a minor,'" was

unconstitutionally overbroad because it "would permit a prosecution and conviction where no actual child was involved in the material or live act." Hazlett, 73 P.3d at 1264 n.10 (quoting Ariz. Rev. Stat. § 13-3556). The Hazlett court, therefore, upheld the constitutionality of section 13-3553 while ruling section 13-3556 unconstitutional. Because the Hazlett court's conclusion on the constitutionality of section 13-3556 was set out in a footnote rather than the body of the opinion, it did not include any analysis of the issue.

Recently, however, another state has rejected a post-Free Speech Coalition challenge to the constitutionality of its child pornography statutes based on language that is virtually identical to subsection (b) of Tennessee's sexual exploitation of a minor statute. In State v. Michael J. Morris, No. 04CA0036, 2005 WL 356801, at *3 (Ohio Ct. App. Feb. 16, 2005), the Ohio Court of Appeals considered whether its child pornography statutes were rendered unconstitutionally overbroad due to the following language, contained in sections 2907.321(B)(3) and 2907.322(B)(3) of the state's Revised Code: "In a prosecution under this section, the trier of fact may infer that a person in the material or performance involved is a minor if the material or performance, through its title, text, visual representation, or otherwise, represents or depicts the person as a minor." After first observing that the wording of the statutes limited its application to material in which an actual child was used, the Ohio court concluded that the provision at issue merely allowed for the State to prove its case through circumstantial evidence and, thus, did not violate the holding in Free Speech Coalition:

> Preliminarily, this Court notes that acts of the General Assembly enjoy a strong presumption of constitutionality. Additionally, R.C. 2907.321 and R.C. 2907.322 are distinguishable from the CPPA provisions, because they only apply to pornography created using real children. There is no indication that the provision contained in R.C. 2907.321(B)(3) and R.C. 2907.322(B)(3) was intended to encompass virtual child pornography. Rather, we read the provision to permit what the common law has always permitted, that the State may prove its case with circumstantial evidence.

> Accepting appellant's position regarding the statutes in question would render them nearly impossible to enforce. Under appellant's contention, the State could only constitutionally convict a defendant of possession of child pornography through two methods: 1) identifying the child depicted and verifying the child's age, or 2) soliciting expert testimony that the child depicted is a minor and that the image in question had not been digitally altered. Under the first scenario, the State would have nearly no avenue with which to convict a defendant when the defendant has used the anonymity of the Internet to obtain child pornography. In the second scenario, circumstantial evidence that the images contain minors would be of little value without the State calling an expert to dispel any possibility, however remote, that the images in question were digitally altered. This Court declines to read such a burden into Ohio's child pornography laws.

Id. at *4 (citations omitted).

In arguing that subsection (b) of the Tennessee statute merely allows for a permissible inference, the State seeks to have us interpret the Tennessee statute in the same manner as the Ohio Court of Appeals has interpreted the equivalent portion of its statute above. The State points out that our case law recognizes that a permissive inference, unlike a mandatory presumption, does not place any burden of proof on a defendant and does not violate a defendant's due process rights. See State v. Sensing, 843 S.W.2d 412, 417 (Tenn. 1992); State v. Bolin, 678 S.W.2d 40, 44-45 (Tenn. 1984); State v. Bonam, 7 S.W.3d 87, 89 (Tenn. Crim. App. 1999); State v. Woodson, 705 S.W.2d 677, 679 (Tenn. Crim. App. 1985). However, the United States Supreme Court opinion on which many of our decisions have relied for this proposition, and which the State quotes in its brief, cautions that "in criminal cases, the ultimate test of any device's constitutional validity in a given case remains constant: the device must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt." County Court of Ulster County, New York v. Allen, 442 U.S. 140, 156, 99 S. Ct. 2213, 2224, 60 L. Ed. 2d 777 (1979).

We are persuaded by Butler's argument that subsection (b) of the sexual exploitation of a minor statute, by allowing a jury to infer that a participant is a minor "if the material through its title, text, visual representation *or otherwise represents or depicts the participant as a minor*," Tenn. Code Ann. § 39-17-1003(b) (emphasis added), comes too close to permitting a conviction based on the possession of material in which an actual minor is not involved, in violation of the holding in Free Speech Coalition. Unlike the Ohio Court of Appeals, we do not believe that eliding the subsection will require the State in every case to put on expert testimony with respect to whether the participant is a child or merely a youthful-looking adult or whether the image is of a real as opposed to a "virtual" child. Indeed, there may well be cases in which the possibility that the image was digitally altered or that the person depicted is an adult is simply too remote for any jury to accept, regardless of whether the State presents any expert testimony on the issue. For example, a case involving an obvious home video of a prepubescent child may not require any proof beyond the alleged pornographic material itself. In this respect, we note that the Sixth Circuit Court of Appeals has concluded that Free Speech Coalition does not place any "heightened" evidentiary burden on the prosecution in a child pornography case:

> Our conclusion that the evidence is sufficient in this case necessarily assumes that Free Speech Coalition did not impose a special or heightened evidentiary burden on the Government to prove that images are of real children. The question of whether the images are virtual or real is one of fact, to be determined by evidence about which argument can be made to the jury. Other circuits have rejected the argument that the Government must meet a higher evidentiary burden than before Free Speech Coalition.

United States v. Farrelly, 389 F.3d 649, 653-54 (6th Cir. 2004) (footnote omitted).

-7-

On the other hand, there will certainly be some cases in which it will not be such a simple matter for the jury to determine if the material contains an actual minor. In such cases, we believe a real possibility exists that the jury, should subsection (b) be allowed to stand, will base its finding that a participant is a minor not on the images themselves, but instead on the manner in which they are labeled, promoted, or depicted. The testimony of the computer technician who discovered the alleged pornographic images on Allen's computer is illustrative of this point. When asked at the general sessions court hearing on Allen's motion to suppress whether he had told the police detective that the name attached to the computer file, "Child Pedo," indicated to him that it contained child pornography, he replied with obvious sarcasm, "'Child Pedo'; yes. What do you think it means?" To be fair, he further testified that he believed the material to be child pornography based on his viewing of the contents of the file, which, he said, consisted of an apparently amateur film of a physically undeveloped young girl engaged in sexual intercourse with an adult man. Nonetheless, we believe the technician's reply indicates that, like many in a similar situation, he may have been predisposed to conclude that the material was child pornography based on the name of the computer file in which it was contained.

Butler contends that the wording of subsection (b) "in effect places the impossible evidentiary burden of proving that the participant is not a minor on the defendant." While we do not accept his characterization of the evidentiary burden as "impossible," we agree that it should fall on the prosecution rather than the defense. As Butler points out, the Free Speech Coalition Court, in rejecting the government's argument that an affirmative defense in the CPPA, applicable to defendants charged with non-possession offenses, saved the challenged provisions from unconstitutionality, noted that:

> In cases under the CPPA, the evidentiary burden is not trivial. Where the defendant is not the producer of the work, he may have no way of establishing the identity, or even the existence, of the actors. If the evidentiary issue is a serious problem for the Government, as it asserts, it will be at least as difficult for the innocent possessor.

Free Speech Coalition, 535 U. S. at 255-56, 122 S. Ct. at 1404. Even if the State is required to put on expert testimony in every case to "dispel any possibility, however remote," Michael J. Morris, 2005 WL 356801, at *4, that the material contains images of a virtual child or an adult masquerading as a child, we do not think the burden is too great for the State to bear, especially in light of the fact that sexual exploitation of a minor, aggravated sexual exploitation of a minor, and especially aggravated sexual exploitation of a minor constitute Class E, C, and B felonies in Tennessee. See Tenn. Code Ann. §§ 39-17-1003(c) (making sexual exploitation of a minor a Class E felony); 39-17-1004(a)(3) (making aggravated sexual exploitation of a minor a Class C felony); 39-17-1004(b)(3) (elevating aggravated sexual exploitation of a minor to a Class B felony when the material is obscene); 39-17-1005(c) (making especially aggravated sexual exploitation of a minor a Class B felony).

Although the Butler trial court found subsection (b) of the statute unconstitutional under Free Speech Coalition, it concluded that the rest of the statute passed constitutional muster and was

enforceable under the doctrine of elision. Under this doctrine, a court may strike a portion of a statute that it finds to be unconstitutional while retaining the remainder of the statute as constitutional and enforceable, as long as doing so does not undermine the legislative intent behind the statute. Planned Parenthood, 38 S.W.3d at 22 (citing State ex. rel Barker v. Harmon, 882 S.W.2d 352, 355 (Tenn. 1994)). "[W]hen a conclusion can be reached that the legislature would have enacted the act in question with the unconstitutional portion omitted, then elision of the unconstitutional portion is appropriate." In re Swanson, 2 S.W.3d 180, 189 (Tenn. 1999).

Butler contends, however, that the entire statute is unconstitutional, arguing that subsection (a) contains terms that are unconstitutionally vague and overbroad in light of the holding in Free Speech Coalition. A statute is void for vagueness if it fails to provide "fair notice to citizens of prohibited activities and minimal guidelines for enforcement to police officers and the courts." State v. Torres, 82 S.W.3d 236, 246 (Tenn. 2002). A statute violates the overbreadth doctrine when, in addition to unprotected speech, it prohibits or "chills" a substantial amount of speech that is protected under the First Amendment. Free Speech Coalition, 535 U.S. at 255, 122 S. Ct. at 1404. Butler first argues that the term "material" in the Tennessee statute is unconstitutionally overbroad because any sexually explicit material, regardless of whether it qualifies as obscenity under Miller, is proscribed as long as it contains images of persons who "*appear* to be less than eighteen." (emphasis in original). He contends that the "sweeping definition of 'material' allows for prosecution for many protected forms of speech, such as 'virtual child porn,' films that are marketed as child pornography but do not contain any minor actors, films or pictures using adult actors or models that appear to be under age eighteen, and text stored on a computer hard drive."

Butler's argument on this issue, however, depends on reading subsection (a) in conjunction with subsection (b) of the statute. Apart from subsection (b), Tennessee's sexual exploitation of a minor statute proscribes only the knowing possession of material, whether it be pictures, drawings, videos, computer disks, etc., which includes a minor, defined as a person less than eighteen, engaged in either sexual activity or simulated sexual activity that is patently offensive. Tenn. Code Ann. §§ 39-17-1002(3), -1003(a). The statute contains no language defining child pornography as material that merely "appears to be" of a minor or that "conveys the impression" that a minor is involved. Thus, unlike the CPPA, Tennessee's sexual exploitation of a minor statute, severed from subsection (b), does not proscribe the possession of "virtual" child pornography or of material containing youthful-looking adults rather than actual children as participants.

Butler also argues that the term "possess," which is not defined in the statute, is unconstitutionally vague due to the "many questions" that "surround computer technology and terminology and the concept of possession." As an example, he argues that someone who unintentionally opens an unsolicited E-mail containing a sexually explicit image of a minor possesses the image by virtue of the hard drive's memory to the same extent as does the person who deliberately downloaded the image from the Internet. However, "[t]he fact that a statute applies in a wide variety of situations and must necessarily use words of general meaning does not render it unconstitutionally vague." State v. Webb, 130 S.W.3d 799, 828 (Tenn. Crim. App. 2003) (citing State v. Lyons, 802 S.W.2d 590, 592 (Tenn. 1990)). Allen's computer expert testified that it is

possible to determine not only when an image was created but also when the file containing the image was accessed. If such is the case, presumably a qualified computer forensic examiner will be able to distinguish between a file accidentally placed on a computer hard drive by the opening of an unsolicited E-mail and a file intentionally downloaded from the Internet, based on the number of times the file has been opened and viewed. "[A] statute is not unconstitutionally vague 'which by orderly processes of litigation can be rendered sufficiently definite and certain for purposes of judicial decision.'" State v. Prater, 137 S.W.3d 25, 32 (Tenn. Crim. App. 2003) (quoting State v. Wilkins, 655 S.W.2d 914, 916 (Tenn. 1983) (internal quotations omitted)). When subsection (b) is elided, the sexual exploitation of a minor statute gives adequate warning of the proscribed conduct, *i.e.*, the knowing possession of sexual material involving a minor, and is sufficient to prevent the arbitrary and discriminatory enforcement on the part of the authorities. Accordingly, we affirm the Butler trial court's ruling and conclude that while subsection (b) of the statute is unconstitutional under Free Speech Coalition, the remainder of the statute is constitutional and may be enforced apart from the unconstitutional provision.

## II. Discovery Ruling

The State contends that the trial courts erred in directing it to turn over the child pornographic images, or "contraband," to the defendants as discovery. It notes that the sexual exploitation statute, unlike Tennessee's obscenity statute, contains no exception for the possession of such material by defense counsel or experts,[1] and cites several cases from other jurisdictions in which an appellate court has upheld the lower court's ruling that the government was not required to copy and disseminate such evidence to the defense. The defendants point out that, in contrast to the cases at bar, many of the opinions on which the State relies involve an appeal following a conviction, where the appellate court has found that no prejudice resulted to the defendant from the trial court's ruling. They argue that the trial courts in the cases at bar acted within their discretion and in accordance with the rules on discovery in ordering the production of the evidence. We agree with the defendants.

Tennessee Rule of Criminal Procedure 16(a)(1)(C) provides:

> Upon request of the defendant, the State *shall* permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the State, and which are material to the preparation of the defendant's defense or are intended for use by the State as evidence in chief at the trial, or were obtained from or belong to the defendant.

Tenn. R. Crim. P. 16(a)(1)(C) (2004) (emphasis added). In ordering the production of the evidence, the Allen trial court relied on the Butler trial court's similar ruling, as well as the decisions of

---

[1]The obscenity statute states in pertinent part that "[i]t is an exception to this section that the obscene material is possessed by a person having scientific, educational, governmental or other similar justification." Tenn. Code Ann. § 39-17-902(e) (2003).

appellate courts in Arizona and California, as set forth in Cervantes v. Cates, 76 P.3d 449 (Ariz. Ct. App. 2003), and Westerfield v. Superior Court of San Diego County, 121 Cal. Rptr. 2d 402 (Cal. Ct. App. 2002). The prosecution in both of these cases, as in the cases at bar, refused the defendants' requests for copies of materials containing alleged child pornography on the basis that the dissemination of such evidence would constitute a violation of the pertinent child pornography statutes.

Unlike Tennessee's statute, the statute at issue in Westerfield contained an express exemption stating that it did not apply to the activities of law enforcement and prosecuting agencies in the investigation and prosecution of criminal offenses under the statute. Id. at 404 n.3. Based on that language, the State argued that *only* law enforcement and prosecuting agencies were exempted from prosecution under the statute. It contended that, had the legislature intended otherwise, it would have written a specific exemption for defense counsel into the statute. Id. The Westerfield court rejected that argument, writing:

> Nothing in the plain language of section 311.1 prohibits the copying of the images for use by the defense in preparing for trial. The People's interpretation of the statute – that the deputy district attorney would violate the law if he copied the images for the defense – not only defeats the purpose of the law and exalts absurdity over common sense, but it is also logically flawed. If the exemption in section 311.1, subdivision (b) allows the prosecutor to duplicate and distribute the images for prosecution purposes as the People readily concede, then the prosecutor can duplicate and distribute the images with impunity to any of the players in the criminal action – to the court pretrial as the prosecutor did on the motion here, to the jury at trial and/or to the defense as part of the prosecutor's discovery duties. In addition, to the extent there is any genuine concern about the disposition of the material provided to the defense, the court can issue a protective order limiting disclosure to counsel and their agents or order the return of the images to the court for destruction at the conclusion of the case under section 312.

> Finally, requiring the defense to view – and apparently commit to memory – the "thousands" of images at the computer crimes office obviously impacts Westerfield's right to effective assistance of counsel and his right to a speedy trial.

Id. at 404-05.

In Cervantes, the Arizona Court of Appeals rejected a similar argument that the prosecutor's dissemination to defense counsel of copies of videotapes and photographs, which allegedly contained pornographic images of children, would constitute a violation of that state's child pornography laws. 76 P.3d at 456. As in the cases at bar, the prosecutor denied the defendant's request for copies of the evidence but offered to make it available for the defendant and his counsel's review at the jail, with a detective assigned to observe their handling of the material. Id. at 451. After reviewing the material in this manner and being unable to complete their examination, the defendant and his

counsel requested that the trial court either assign a different detective for a second viewing or have the prosecutor provide copies of the material to them for their independent review. Id. at 451-52. The trial court denied the request, and the defendant then filed a "special action petition from the trial court's order denying his motion to compel." Id. at 452.

In reversing the trial court, the Cervantes court distinguished other cases which have reached a different result on the basis that they came before the reviewing courts on a different procedural posture. Id. at 455 ("Those cases [United States v. Horn, 187 F.3d 781 (8th Cir. 1999); United States v. Kimbrough, 69 F.3d 723 (5th Cir. 1995); State v. Ross, 792 So. 2d 699 (Fla. Dist. Ct. App. 2001); United States v. Husband, 246 F. Supp. 2d 467 (E.D. Va. 2003)] are distinguishable both because the courts were analyzing whether any possible error was harmless and, in at least one of those cases, the government was offering to bring the material to defense counsel to allow him to review them in the convenience of his office."). Relying on the reasoning of the Westerfield court, the Cervantes court concluded that the possession or distribution of child pornography that occurs in the context of the prosecution of a case does not constitute a violation of Arizona's child pornography statutes:

> The State's final argument is that A.R.S. § 13-3553 does not provide any immunity to defense counsel for his possession of the materials. We reject that argument as unpersuasive and inconsistent with the purpose of section 13-3553 to the extent that defense counsel uses the material solely for purposes of defending this case. Arizona's child pornography laws were not aimed at prohibiting defense counsel from preparing for trial, but to prohibit the spread of child pornography. . . .
>
> Accepting the State's argument would require this Court to hold that because section 13-3553 does not provide any immunity for law enforcement officials, police possession of contraband, be it drugs or child pornography, would be illegal. Similarly, the State's showing of the pornography at trial and even this Court's receipt and possession of the pornographic materials on appeal would be illegal. Provided that defense counsel, like the police, prosecutors and court personnel use the material solely for their investigation, prosecution, defense and resolution of the case at hand, neither their possession of it nor the State's copying of it solely for such purposes should expose them to criminal liability.

Id. at 456-57 (citations and footnote omitted).

We find the reasoning of the Westerfield and Cervantes courts to be persuasive and, likewise, conclude that the possession, copying, or distribution of child pornographic materials does not constitute a violation of Tennessee's sexual exploitation of a minor statutes so long as it occurs in the context of the prosecution or defense of a case under the statute. In both Allen's and Butler's cases, the trial courts entered protective orders to keep the evidence secure and to confine its dissemination to defense counsel and counsel's agents and employees in the preparation of their defense. We find these orders reasonable and appropriate, especially given Allen's computer

expert's testimony with respect to the extensive and exhaustive work entailed in his examination of Allen's computer hard drive.  Accordingly, we conclude that the trial courts did not err in granting the defendants' motions to compel the production of the evidence.

Allen raises as an additional issue whether the evidence should be excluded entirely based on the State's failure to comply with the rules of discovery.  Exclusion of evidence, however, is an extreme sanction which is not warranted except when a violation of Rule 16 has resulted in actual prejudice to a party which "cannot be otherwise eradicated."  State v. James, 688 S.W.2d 463, 466 (Tenn. Crim. App. 1984).  No such prejudice has occurred in this case.  Accordingly, we deny his request for the exclusion of the evidence.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the rulings of the trial courts.

_____
ALAN E. GLENN, JUDGE